Goriune Dudukgian (Alaska Bar No. 0506051)
James J. Davis, Jr. (Alaska Bar No. 9412140)
NORTHERN JUSTICE PROJECT, LLC
310 K Street, Suite 200
Anchorage, AK 99501
Tel: (907) 264-6634 | Fax: (866) 813-8645
Email: gdudukgian@njp-law.com
Email: jdavis@njp-law.com

Carl S. Charles (admitted pro hac vice)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall St., 19th Floor
New York, NY 10005
Tel: 212-809-5858 | Fax: 212-809-0055
Email: ccharles@lambdalegal.org

Tara L. Borelli (admitted pro hac vice)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
730 Peachtree St. NE, Ste. 640
Atlanta, GA 30308
Tel: 470-225-5341 | Fax: 404-897-1884
Email: tborelli@lambdalegal.org

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KOMET BEING, ROBIN BLACK, and AUSTIN REED, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM CRUM, in his official capacity as Commissioner of the Alaska Department of Health and Social Services, and ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES,<br><br>Defendants. | Case No. 3:19-cv-00060-HRH<br><br>**FIRST AMENDED  CLASS ACTION COMPLAINT** |

1

## PRELIMINARY STATEMENT

1.      Plaintiff Komet ("Swan") Being, Robin Black, and Austin Reed are transgender Alaska residents who receive medical assistance through Alaska's Medicaid program ("Alaska Medicaid"). Plaintiffs, and all other similarly situated transgender beneficiaries of Alaska Medicaid in need of treatment for gender dysphoria, are being denied medically necessary services by the defendants based on a discriminatory regulation (hereinafter "the Regulation") that categorically denies Medicaid coverage for "treatment, therapy, surgery, or other procedures related to gender reassignment." 7 Alaska Administrative Code (AAC) 105.110(12).

2.      Defendants' discriminatory Regulation treats transgender beneficiaries of Alaska Medicaid as second-class citizens and treats their transition-related health care needs as "medically unnecessary." The Regulation is grounded in sex stereotypes, discomfort with gender nonconformity, and moral disapproval of people who are transgender.

3.      Not only does the Regulation discriminate on the basis of sex, it also lacks any rational basis. The Regulation flies in the face of the medical consensus that gender-confirming medical care is the only safe and effective medical treatment for gender dysphoria – the clinically significant distress associated with having a gender identity (the innate, internal sense of one's sex, i.e., being male of female) that conflicts with the sex one was assigned at birth – and wholly disregards the harms of denying transgender individuals access to critical and often life-saving care.

2

*Being v. Crum,* No. 3:19-cv-00060-HRH

4.    Plaintiffs have been denied Medicaid coverage for medically necessary treatments for gender dysphoria as a result of the defendant's discriminatory Regulation. They bring this action on behalf of themselves and all others similarly situated to challenge the Regulation as a violation of their civil rights under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("ACA"); the comparability and availability requirements of the federal Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A)-(B); and the Equal Protection Clause of the U.S. Constitution.

## JURISDICTION

5.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

6.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983.

7.    Venue is proper under 28 U.S.C. § 1391 because defendants reside and are subject to personal jurisdiction in the District of Alaska; the events or omissions giving rise to plaintiffs' claims occurred within the District; and plaintiffs and the putative class members all reside in the District.

## PARTIES

8.    Plaintiff Komet ("Swan") Being is a natural person who resides in Homer, Alaska. Ms. Being is a transgender woman who has lived in accordance with her female gender identity at all times material to this complaint.

9.    Plaintiff Robin Black is a natural person who resides in Anchorage, Alaska. Ms. Black is a transgender woman who has lived in accordance with her female gender identity at all times material to this complaint.

3

10.     Plaintiff Austin Reed is a natural person who resides in Anchorage, Alaska. Mr. Reed is a transgender man who has lived in accordance with his male gender identity at all times material to this complaint.

11.     Defendant Adam Crum is the Commissioner of the Alaska Department of Health and Social Services ("DHSS"), which is the agency that is responsible for administering Alaska's Medicaid program. Commissioner Crum is sued in his official capacity. Defendant Crum is a "person" subject to liability under 42 U.S.C. § 1983.

12.     Defendant Alaska Department of Health and Social Services ("DHSS") is the agency that is responsible for administering Alaska's Medicaid program. DHHS receives federal financial assistance for Alaska's Medicaid program.

## GENERAL ALLEGATIONS

### *The Medicaid Program*

13.     Congress established the Medicaid program in 1965 as a joint federal-state endeavor to provide medical assistance to eligible low-income individuals whose resources and income are insufficient to afford necessary medical services.

14.     Through Medicaid, the federal government subsidizes a substantial portion of a participating state's expenditures in providing covered medical care.

15.     Although state participation in Medicaid is optional, participating states must comply with the federal requirements of the Medicaid program.

16.     The Medicaid Act requires each participating state to designate a single state agency that is responsible for administering or supervising the state's Medicaid program. 42 U.S.C. § 1396a(a)(5).

4

17.     The Medicaid Act requires that participating states cover certain mandatory health care services, including in-patient and out-patient hospital services and physician services, if they are medically necessary. 42 U.S.C. §§ 1396a(a)(l0)(A), 1396d(a).

18.     Under the Medicaid Act, "the medical assistance made available to any individual . . . shall not be less in amount, duration or scope that the medical assistance made available to any other such individual."  42 U.S.C. § 1396a(a)(10)(B)(i).

19.     In addition, a state "Medicaid agency may not arbitrarily deny or reduce the amount or scope of a required service . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition" of the recipient. 42 C.F.R. § 440.230(c).

20.     Moreover, state Medicaid programs must provide medical assistance "in a manner consistent with . . . the best interests of the recipients."  42 U.S.C. § 1396a(a)(19).

21.     During all relevant times, the State of Alaska has participated in the Medicaid program and has received federal funds from the U.S. Department of Health and Human Services ("HHS").

22.     DHSS is the "single state agency" that administers Alaska Medicaid.

23.     DHSS has promulgated a regulation which categorically denies Medicaid coverage for "treatment, therapy, surgery, or other procedures related to gender reassignment." 7 AAC 105.110(12). Since the Regulation's promulgation, DHSS has categorically denied medically necessary services to transgender individuals seeking transition-related health care, including, but not limited to, gender-confirming surgical procedures and related treatments for gender dysphoria.

*Gender Identity and Gender Dysphoria*

5

24.     Gender identity is a well-established medical concept, referring to one's innate, internal sense of one's sex – i.e., being male or female – and is a basic part of every person's core identity. Typically, a person's gender identity is consistent with the sex they were assigned at birth. Transgender people, however, have a gender identity that is different from their assigned sex.

25.     Transgender men are men who were assigned "female" at birth, but have a male gender identity. Transgender women are women who were assigned "male" at birth, but have a female gender identity.

26.     Gender dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") and International Classification of Diseases (ICD-10). Under the DSM-V, gender dysphoria is the clinically significant distress or impairment in social, occupational, or other areas of function associated with the incongruence between a transgender person's gender identity and assigned sex.

27.     The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH Standards of Care have been recognized as the authoritative standards of care by the leading medical organizations, including the American Medical Association, the American Psychological Association, and the American Academy of Pediatrics.

28.     Under the WPATH standards, medically necessary treatment for gender dysphoria may require medical steps to affirm one's gender identity and transition from living as one gender to another. This treatment, often referred to as transition-related care, may include hormone therapy, surgery (sometimes called "sex reassignment surgery" or

"gender confirmation surgery"), and other medical services that align individuals' bodies with their gender identities. The exact medical treatment varies based on the individualized needs of the person.

29.     When a transgender person's gender dysphoria is left untreated, the consequences can be dire. Symptoms can include intense emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those symptoms can be mitigated, and often prevented altogether, for transgender people with access to appropriate individualized medical care as part of their gender transitions.

30.     There is no medical or scientific support for the Regulation, which categorically denies Medicaid coverage for transition-related health care for transgender people with gender dysphoria. To the contrary, there is a strong consensus among medical and mental health professionals that gender-confirming surgical procedures and hormonal treatments are the only safe and effective medical treatments for the gender dysphoria experienced by many transgender individuals, including plaintiffs Komet Being, Robin Black, and Austin Reed.

31.     In June 2008, the American Medical Association ("AMA") passed Resolution 122 recognizing gender dysphoria (then known as Gender Identity Disorder or GID) as a "serious medical condition" which, "if left untreated, can result in clinically significant psychological distress, dysfunction, debilitating depression and, for some people without access to appropriate medical care and treatment, suicidality and death." American Medical Association, Resolution 122, Removing Financial Barriers to Care for Transgender Patients (June 16, 2008). The AMA's resolution stated that "experts in GID,

including [WPATH], have rejected the myth that such treatments are 'cosmetic' or 'experimental' and have recognized that these treatments can provide safe and effective treatment for a serious health condition." *Id*.

32.     In Resolution 122, the AMA opposed categorical exclusions of coverage for treatment of gender dysphoria when prescribed by a physician, noting that "many of these same treatments . . . are often covered for other medical conditions" and that "the denial of these otherwise covered benefits for patients suffering from GID represents discrimination based solely on a patient's gender identity." *Id*.

33.     The American Psychiatric Association, the American Psychological Association, and the Endocrine Society have all issued similar resolutions.

34.     Applying contemporary standards of care, Medicare, private insurers, and the *vast majority* of state Medicaid programs routinely cover transition-related surgery as medically necessary treatment for gender dysphoria.

*Facts Concerning Plaintiff Komet Being*

35.     Plaintiff Komet ("Swan") Being is a 70-year-old transgender woman who resides in Homer, Alaska. Ms. Being has lived in Homer since 1983.

36.     During all relevant times, Ms. Being has been a beneficiary of Alaska Medicaid. Ms. Being relies on Alaska Medicaid for her health care needs.

37.     Ms. Being has been medically diagnosed with gender dysphoria. She experiences dysphoria related to the disconnect between her primary and secondary sex characteristics and her gender identity.

8

38.     Ms. Being underwent a gender transition and has been living as a woman for nearly five years. As part of her gender transition, Ms. Being has received medical treatment, including Hormone Replacement Therapy ("HRT"), to alleviate her gender dysphoria by aligning her physical characteristics with her gender identity.

39.     Ms. Being's medical and mental health providers have recommended that she continue to receive medical treatment related to her hormone levels to alleviate her ongoing symptoms of gender dysphoria. Unfortunately, Alaska Medicaid denies coverage for this treatment. Consequently, she has suffered, and remains at risk for, symptoms of gender dysphoria, severe emotional distress, and physical injury and pain, all of which would be avoidable if she had access to this medically necessary care.

40.     On or about January 10, 2019, Ms. Being's treating doctor requested prior authorization from Alaska Medicaid for round-trip transportation services to and from her home in Homer so that Ms. Being could receive hormonal injections and lab work associated with her gender reassignment.

41.     On or about January 25, 2019, Conduent State Healthcare, LLC, which has a contract with DHSS to provide authorization review for certain medical services, sent Ms. Being a notice which denied the request for travel authorization for the following reason: "HORMONAL INJECTIONS AND LAB WORK ASSOCIATED WITH GENDER REASSIGNMENT IS NOT A COVERED BENEFIT UNDER ALASKA MEDICAID. MEDICAID DOES NOT TRAVEL FOR NON-COVERED SERVICES." As legal support, the notice cited to the Regulation.

*Facts Concerning Plaintiff Robin Black*

42.     Plaintiff Robin Black is a 30-year-old transgender woman who resides in Anchorage, Alaska.

43.     Ms. Black first enrolled in Alaska Medicaid in January 2018. Ms. Black relies on Alaska Medicaid for her health care needs.

44.     Ms. Black has been medically diagnosed with gender dysphoria. She experiences dysphoria related to the incongruence between her primary and secondary sex characteristics and her gender identity.

45.     Ms. Black became aware of her gender identity at an early age, but she felt pressured by anti-transgender bias in society, and tried to ignore the deep conviction of her female gender identity.  It was not until 2014 that Ms. Black understood that she felt this way because she was transgender, and that she was able to pursue a social and medical gender transition, receive transition-related health care including HRT, and express her female gender to others.

46.     Once enrolled with Alaska Medicaid, Ms. Black attempted to obtain Medicaid coverage for HRT, her ongoing treatment of gender dysphoria.

47.     On or about January 15, 2018, Ms. Black was denied coverage under Alaska Medicaid for injectable estrogen as part of her ongoing HRT.  In order to continue treating her gender dysphoria, she began to pay full price for the estrogen and continued to do so after that time for approximately 1.5 years.

48.     In approximately June 2018, Ms. Black was prescribed progesterone to supplement her ongoing HRT care.  She attempted to obtain Medicaid coverage for the

progesterone, but was again denied by Alaska Medicaid. In order to continue treating her gender dysphoria, she paid full retail price for the progesterone prescription.

49.     Ms. Black's birth certificate bears her correct legal name and gender. Ms. Black changed her name via court order, updated her Social Security records, and updated her driver's license. Ms. Black has updated her Alaska Medicaid gender marker to reflect her female gender.

50.     After Ms. Black updated her Alaska Medicaid gender marker in late spring 2019 to reflect her female gender, Alaska Medicaid began to cover her injectable estrogen and progesterone medications.

51.     Ms. Black experiences severe distress and embarrassment over her male-appearing genitals, but the Regulation precludes her from obtaining a medically necessary bilateral orchiectomy for the purposes of treating her gender dysphoria.

*Facts Concerning Plaintiff Austin Reed*

52.     Plaintiff Austin Reed is a 49-year-old transgender man who resides in Anchorage, Alaska.

53.     Mr. Reed has been diagnosed with gender dysphoria. He experiences dysphoria related to the incongruence between his primary and secondary sex characteristics and his gender identity.

54.     Mr. Reed felt different from the age of twelve or thirteen. He considered himself a "tomboy" and always wondered why he could not have been born a boy. However, due to pressure from his family and his religious community, he tried to do what was expected of him, and attempted to ignore his feelings of gender dysphoria.

11

55.     It was not until Mr. Reed met another transgender man through his church community that, with the support and acceptance of his wife, Mr. Reed was able to address his feelings of gender dysphoria.  He was able to pursue a social and medical gender transition, receive transition-related health care including HRT, and express his male gender to others.

56.     Mr. Reed began hormone replacement therapy in the form of injectable testosterone on or about Oct. 6, 2015.

57.     Mr. Reed changed his name via Arizona court order in 2016, and updated his gender marker and name on his Social Security records and driver's license.

58.     Mr. Reed experiences severe distress and embarrassment over the presence of female-appearing breasts on his body. When they are visible, they sometimes lead Mr. Reed to be incorrectly identified as female, which can intensify the distress he experiences.

59.     To reduce the risk of being incorrectly identified as female, Mr. Reed often employs the use of "binders," which are garments that flatten or reduce the profile of his chest. However, even with the use of binders, Mr. Reed experiences distress over the presence of his chest, which is an ongoing source of his gender dysphoria.

60.     Mr. Reed also experiences pain and medically significant bleeding from the use of binders over long periods of time.  In November of 2018, Mr. Reed experienced a bloody discharge from his nipple, driving him to seek to obtain a bilateral mastectomy to treat his ongoing gender dysphoria, relieve the distress he experiences over his female-appearing chest, and eliminate the need for the ongoing use of binders. This chest

reconstruction surgery is a widely accepted and effective surgical procedure for treating gender dysphoria.

61.     On November 15, 2018, Mr. Reed's medical providers received a notice that his request for a bilateral mastectomy was denied because, "Per Alaska Medicaid, gender reassignment surgical procedures or sequelae are not covered."

## CLASS ALLEGATIONS

62.     Plaintiffs bring this action on their own behalf and on behalf of all persons who are similarly situated, under Fed. R. Civ. P. 23(a) and 23(b)(2).

63.     The class is defined as follows: All beneficiaries of Alaska Medicaid who have sought in the two years prior to the filing of this complaint, or will seek in the future, Medicaid coverage for "treatment, therapy, surgery, or other procedures related to gender reassignment."

64.     All requirements for class certification under Fed. R. Civ. P. 23(a) are met in this case. Specifically:

a.     The class is so numerous that joinder of all members is impracticable. There are currently more than 350 beneficiaries of Alaska Medicaid with a diagnosis of gender dysphoria who have been or may be denied medically-necessary services because of the Regulation.

b.     There are questions of law or fact common to the class, including whether defendant is violating section 1557 of the ACA; the comparability and availability requirements of the federal Medicaid Act; and/or the Equal Protection Clause of the

13

Fourteenth Amendment by categorically denying Medicaid coverage for "treatment, therapy, surgery, or other procedures related to gender reassignment."

      c.     The claims of the representative parties are typical of those of the class.

      d.     The representative parties will fairly and adequately represent the class. Neither the representative plaintiffs nor their counsel have interests which might cause them not to vigorously pursue this action.

      65.     Certification of a class under Fed. R. Civ. P. 23(b)(2) is appropriate because the defendants at all times have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

**STATEMENT OF CLAIMS**

**COUNT I**

**(Unlawful Discrimination on the Basis of Sex in Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C § 18116)**

***Against Defendant Alaska Department of Health and Social Services***

      66.     Plaintiffs repeat and incorporate by reference the allegations in each of the preceding paragraphs.

      67.     Under Section 1557 of the Affordable Care Act, "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or

14

under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments)" on the basis of sex. 42 U.S.C. § 18116.

68.     Discrimination on the basis of gender identity and/or reliance on sex stereotyping constitute discrimination on the basis of sex for purposes of Section 1557 of the Affordable Care Act. 45 C.F.R. § 92.4.

69.     By virtue of its acceptance of federal financial assistance from HHS, DHSS is subject to the nondiscrimination requirements of section 1557 of the ACA.

70.     The Regulation, on its face and as applied to the plaintiffs and the putative class members, violates section 1557's prohibition against discrimination on the basis of sex in a health program or activity receiving federal funding.

71.     As a result of defendant DHSS's discrimination, committed under color of state law, plaintiffs and the putative class members have been and are continuing to be injured as a result of being denied medically necessary care. Plaintiffs and the putative class members have suffered damages as a result.

## COUNT II

### (Violation of the Medicaid Act's Availability Requirements, 42 U.S.C § 1396a(a)(10)(A))

### *Against Defendant Crum*

72.     Plaintiffs repeat and incorporate by reference the allegations in each of the preceding paragraphs.

73.     The Regulation and defendant Crum's refusal to provide medically necessary services to plaintiffs and the putative class members violate the Medicaid Act's

15

availability requirement, 42 U.S.C. § 1396a(a)(10)(A), which is enforceable via 42 U.S.C. § 1983.

## COUNT III

### (Violation of the Medicaid Act's Comparability Requirements, 42 U.S.C § 1396a(a)(10)(B))

### *Against Defendant Crum*

74.     Plaintiffs repeat and incorporate by reference the allegations in each of the preceding paragraphs.

75.     The Regulation and defendant Crum's refusal to provide medically necessary services to plaintiffs and the putative class members violate Medicaid's comparability requirement, 42 U.S.C. § 1396a(a)(10)(B), which is enforceable via 42 U.S.C. § 1983.

## COUNT IV

### (Violation of 42 U.S.C. § 1983 Based on the Deprivation of Plaintiffs' Rights Under the Equal Protection Clause of the Fourteenth Amendment)

### *Against Defendant Crum*

76.     Plaintiffs repeat and incorporate by reference the allegations in each of the preceding paragraphs.

77.     The Regulation, on its face and as applied to plaintiffs and the putative class members, discriminates against transgender individuals on the basis of transgender status and sex in violation of the right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

16

78.    Defendant Crum has thereby, under color of state law, deprived plaintiffs and the putative class members of the rights, privileges or immunities secured by federal law in violation of 42 U.S.C. § 1983.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs respectfully ask that this Court enter judgment in favor of the plaintiffs and the putative class members as follows:

A.    Assume jurisdiction over this matter;

B.    Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2) with respect to the proposed class identified herein;

C.    Issue preliminary and permanent injunctions enjoining any further enforcement or application of the Regulation, 7 AAC 105.110(12), and direct defendants to begin providing Medicaid coverage for all medically necessary care, including surgical treatments, hormone treatment therapy, and other required costs associated with such care, necessary for the treatment of gender dysphoria;

D.    Enter a declaratory judgment that the Regulation, both on its face and as applied to plaintiffs and the putative class members:

i.    Violates section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, by discriminating on the basis of sex (including sex stereotyping, gender identity, being transgender, and undergoing a gender transition);

17

*Being v. Crum,* No. 3:19-cv-00060-HRH

ii.     Violates the Medicaid act's availability requirement, 42

U.S.C.§ 1396a(a)(10)(A);

iii.    Violates the Medicaid act's comparability requirement, 42

U.S.C.§ 1396a(a)(10)(B); and

iv.    Violates the Equal Protection Clause of the Fourteenth

Amendment by discriminating on the basis of transgender status

and sex.

E.     Award compensatory damages, as permitted under Section 1557 of

the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, in an

amount that would fully compensate the plaintiffs for: (1) the harms to their

short and long-term health and well-being, including emotional  distress,

from being denied access to medically necessary health care as a result of

the Regulation; (2) their economic losses; and (3) all other injuries that

have been caused by defendant DHSS's acts and omissions alleged in this

Complaint;

F.     Award the plaintiffs litigation costs and reasonable attorney's fees,

pursuant to 42 U.S.C. § 1988 or other applicable statutes; and

G.     Grant any such other, further, or different relief as the Court may

deem just and proper.

DATED this 8th day of January, 2020 at Anchorage, Alaska.

NORTHERN JUSTICE PROJECT, LLC
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Attorneys for Plaintiff

By: /s/ Carl S. Charles
    Goriune Dudukgian, ABA No. 0506051
    James J. Davis, JR., ABA No. 9412140
    Tara L. Borelli (admitted pro hac vice)
    Carl. S. Charles (admitted pro hac vice)

*Being v. Crum,* No. 3:19-cv-00060-HRH